IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HOWARD N. MAYBURY,                    :

    Plaintiff,                    :
                                            Case No. 3:06cv363
    vs.                           :
                                            JUDGE WALTER HERBERT RICE
CURTIS F. SLATON, et al.,             :

    Defendants.                   :

---

DECISION AND ENTRY OVERRULING PLAINTIFF'S MOTION FOR
RECONSIDERATION (DOC. #97)

---

An overspraying incident occurred at Wayside Body Shop, Inc. (Wayside"), on August 29 or 30, 2006. Plaintiff Howard Maybury ("Plaintiff" or "Maybury"), who was then employed by Wayside, was one of those suspected of having done the overspraying. Mark Campbell, Sr. ("Campbell"), Wayside's owner,[1] asked Defendant Curtis Slaton ("Slaton"),[2] its attorney, to become involved in the investigation of that incident. On September 11, 2006, Slaton met with Campbell, Maybury and two other employees suspected of being involved in the

---

[1]Campbell is also Plaintiff's uncle.

[2]Currently, the only Defendants in this litigation are Slaton and his law firm, Bogin, Patterson, Ellis, Slaton & Stump, LLP. The Court refers to them collectively as Defendants.

overspraying.  At that meeting, Slaton provided Wayside's Policy 717, entitled Company Investigations, to the three suspects.  That policy provided, inter alia, that Wayside had the right to conduct investigations concerning any possible wrongdoing and that its "investigation may include [an employee] submitting to a lie detector test."  The policy also provided that failure to cooperate in an investigation "will result in disciplinary action including termination of the employee's employment."  On September 15, 2006, Slaton met again with Maybury, at the former's office.[3]  Slaton handed Maybury a copy of revised Policy 717,[4] which did not mention lie detector tests.  During the course of that meeting, Maybury refused to sign an acknowledgment, which indicated, inter alia, that he had received a copy of the revised policy.  As a result of Maybury's failure to sign the acknowledgment, Slaton fired him.  Indeed, both Maybury and Slaton testified during their depositions that Maybury was fired, because he had refused to sign the acknowledgment.

In his Amended Complaint (Doc. #47), Plaintiff has set forth a claim arising under the Employee Polygraph Protection Act ("EPPA"), 29 U.S.C. § 2001, et seq., against Defendants.  That claim is predicated upon the allegations that Defendants violated that statute by requesting Maybury to submit to a lie detector test, which is prohibited by 29 U.S.C. § 2002(1) (Doc. #47 at ¶ 39); by threatening Maybury that he would be disciplined or discharged if he refused to take a polygraph, which is prohibited by 29 U.S.C. § 2002(3) (id. at ¶ 42); by terminating Maybury's

---

[3]Slaton and Maybury were the only two participants in that meeting.

[4]Slaton drafted both the initial and revised policies.  Between the two meetings, he had first learned about the federal statute implicated in this litigation and that the initial policy could violate that statute.

- **2** -

employment for attempting to exercise his right to obtain and to consult with counsel, before signing documents relating to a polygraph (id. at ¶ 43); by failing to post the notices required by 29 U.S.C. § 2003 (id. at ¶ 44); and by failing to provide Maybury with the notices and written documentation required by 29 U.S.C. § 2007(b)(2) (id. at ¶ 45). In addition, Plaintiff has set forth a claim against Slaton of intentional infliction of emotional distress under the common law of Ohio. Doc. #47 at ¶¶ 56-59.

During a telephone conference call conducted on Monday, July 27, 2009, this Court informed counsel that it was overruling Plaintiff's request for summary judgment and sustaining that filed by Defendants on Maybury's claim of intentional infliction of emotional distress and those aspects of Maybury's claim under the EPPA, arising out of the allegations that Slaton violated that statute by terminating Maybury's employment with Wayside for attempting to exercise his right to obtain and to consult with counsel before signing documents relating to a polygraph, in violation of 29 U.S.C. § 2002(b)(4); by failing to post, on their premises, the notices required by 29 U.S.C. § 2003; and by failing to provide Maybury with the notices and written documentation required 29 U.S.C. § 2007(b)(2). See Transcript of July 27, 2009, Conference Call ("Tr.") (Doc. #96). The Court also informed counsel that it was overruling the Defendants' motion as it related to Plaintiff's claim under the EPPA predicated on the allegations that Slaton had violated 29 U.S.C. § 2002(1), by requesting Maybury to submit to a lie detector test; and that he had violated 29 U.S.C. § 2002(3), by threatening Maybury that he would be disciplined or discharged if he refused to take such a test. Id. In its Decision of August 12, 2009 (Doc. #95), this Court journalized the results of that

conference call, as well as elaborating upon its rationale.  As a result of the Court's ruling on those motions, the only remaining aspects of Plaintiff's claim under the EPPA are those predicated upon on the allegations that Slaton had violated 29 U.S.C. § 2002(1), by requesting Maybury to submit to a lie detector test; and that he had violated 29 U.S.C. § 2002(3), by threatening Maybury that he would be disciplined or discharged if he refused to take a polygraph.

This case is now before the Court on the Plaintiff's Motion for Reconsideration (Doc. #97).  The Court and counsel discussed the filing of such a motion by Plaintiff, during the conference call conducted on July 27, 2009.  In his motion, Plaintiff indicates that he is seeking reconsideration of the following conclusions reached by the Court:

> 1) That no evidence exists from which a reasonable inference can be drawn that during the September 15th meeting, Mr. Slaton knew that [Plaintiff] was asserting his right to consult with counsel or an employee representative before signing the documents; and that such a finding is required for [Plaintiff] to prove his claim that he was terminated for exercising his rights under the EPPA in violation of 29 U.S.C. § 2002(4)(C);
> 2) That the Defendants are able to take advantage of the ongoing investigation exemption despite the fact that the Plaintiff was not provided the written notice required by 29 U.S.C. § 2007(b)(2), since the Plaintiff never actually took the polygraph examination; and
> 3) That an issue of fact exists with respect to whether Mr. Slaton was acting as an "employer," as defined by the Act, at the time he threatened [Maybury] with disciplinary action for refusing to take a polygraph.

Doc. #97 at 2.  Since the Plaintiff's motion raises the issue of whether this Court appropriately granted summary judgment on those issues, the Court begins its analysis by setting forth the procedural standards it must apply when ruling on a motion seeking summary judgment, partial or otherwise, filed by a party who does

not have the burden of persuasion on the issue at trial.[5] It will then turn to the three propositions advanced by the Plaintiff, discussing them in the above order. However, before engaging in that analysis, this Court will briefly discuss the procedural basis for Plaintiff's request for reconsideration.

Plaintiff moves in accordance with Rule 54(b) of the Federal Rules of Civil Procedure, which provides:

> (b) Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief--whether as a claim, counterclaim, cross claim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. <u>Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities</u>.

(emphasis added). See Rodriguez v. Tennessee Laborers Health & Welfare Fund, 89 Fed. Appx. 949, 959 (6th Cir. 2004) (noting that Rule 54(b) authorizes District Courts "to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment"). Since this Court has not adjudicated all of Maybury's claims, his request for reconsideration is governed by the above, emphasized sentence of Rule 54(b). In Rodriguez, the Sixth Circuit noted that "courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a

---

[5]As is explained below, infra, at 19, the burden on a party seeking summary judgment on an issue upon which it will bear the burden of persuasion at trial is different from the showing that must be made when the movant will not bear such a burden at trial.

clear error or prevent manifest injustice."[6]  Id.  Accord Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLC, 322 F.3d 147, 167 (2d Cir. 2003).  Herein, the Plaintiff has not argued that there has been a change in the law or that new evidence is available; therefore, this Court concludes that he is relying on the third prong of the above test, i.e., that there is "a need to correct a clear error or prevent manifest injustice."

I.  Procedural Standards Governing Motions for Summary Judgment

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323.  See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)).  The burden then shifts to the nonmoving party who "must set forth specific facts

---

[6]The Sixth Circuit has applied a nearly identical test when determining whether the law of the case doctrine prohibits reconsideration of an earlier decision.  See e.g., Westside Mothers v. Olszewski, 454 F.3d 532, 538 (6th Cir. 2006).

showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50).  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  See also Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff.").  Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  Celotex Corp., 477 U.S. at 324.  Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Summary judgment shall be denied "[i]f there are … 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).  Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party.  Anderson, 477 U.S. at 255 (emphasis added).  If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder.  10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726.  In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not … obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."  Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990).  See also L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ….").  Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

II.  Did the Court Erroneously Conclude that There Was Not a Genuine Issue of Material Fact that, during the September 15th Meeting, Slaton Knew that Plaintiff Was Asserting His Right to Consult with Counsel before Signing the Documents and That Such a Finding Is Required for Plaintiff to Prove His Claim That He Was Terminated for Exercising His Rights under the EPPA in Violation of 29 U.S.C. § 2002(4)(C)

This branch of the Plaintiff's motion arises out of the events which occurred on September 15, 2006, when Maybury went to Slaton's office, at the latter's request, in order for Slaton to provide Maybury a copy of revised Policy 717.[7] During that meeting and before Maybury had reviewed that policy, Slaton asked him to sign an acknowledgment, indicating that he had been given a copy of the revised policy.  Maybury refused to sign the acknowledgment, which ultimately led to Slaton's firing him.  Before meeting with Slaton on September 15th, Maybury had previously met with an attorney.  On September 15th, Maybury was not willing to sign anything, before consulting with an attorney.[8]  Thus, with this

---

[7]Although mentioning this claim briefly during the conference call of July 27, 2009, this Court did not discuss this claim in its Decision of August 12, 2009, except to state:

> This Court notes that the Plaintiff intends to file a motion with which he would seek, inter alia, reconsideration of the Court's conclusion that the evidence fails to raise a genuine issue of material fact concerning the question of whether Slaton violated 29 U.S.C. § 2002(b)(4) by terminating Maybury's employment with Wayside for attempting to exercise his right to obtain and to consult with counsel before signing documents relating to a polygraph.  When it rules upon the Plaintiff's anticipated motion seeking reconsideration, this Court will, if still pertinent, elaborate on its reasoning in support of that conclusion.

Doc. #95 at 10 n. 7.

[8]Whether the evidence raises a genuine issue of material fact that Slaton was aware of Maybury's desire in that regard is one of the questions raised by

- **9** -

aspect of his claim under the EPPA, Plaintiff contends that Slaton violated 29 U.S.C. § 2002(4)(C), by terminating Maybury's employment with Wayside for attempting to exercise his right to obtain and to consult with counsel before signing documents relating to a polygraph.[9]  Section 2002(4)(C) provides:

> Except as provided in sections 2006 and 2007 of this title, it shall be unlawful for any employer engaged in or affecting commerce or in the production of goods for commerce–
>    *      *      *
> (4) to discharge, discipline, discriminate against in any manner, or deny employment or promotion to, or threaten to take any such action against, any employee or prospective employee <u>because</u>–
>    *      *      *
> > (C) of the exercise by such employee or prospective employee, on behalf of such employee or another person, of any right afforded by this chapter.

(emphasis added).

   As an initial matter, the Defendants argue that, regardless of whether this Court erroneously concluded that the evidence failed to raise a genuine issue of material fact on the question of whether Slaton knew that Maybury wanted to consult with an attorney, as Maybury argues, he cannot prevail on this claim, given that § 2002(4)(C) only prohibits an employer from discharging an employee, because he (the employee) exercised "any right afforded by this Chapter" and consulting counsel does not constitute such a right.  For reasons which follow, this Court agrees with Defendants.

---

Plaintiff's Motion for Reconsideration (Doc. #97).

[9]The allegations supporting this particular aspect of Plaintiff's claim under EPPA are set forth in ¶ 43 of his Amended Complaint (Doc. #47).

Consulting with an attorney is mentioned in 29 U.S.C. § 2007(b)(2), which provides in relevant part:

> (b) <u>Rights of examinee</u>
> The exemptions provided under subsections (d), (e), and (f) of section 2006 of this title shall not apply unless the requirements described in the following paragraphs are met:
> \*    \*    \*
> (2) <u>Pretest phase</u>
> During the pretest phase, the prospective examinee–
> (A) is provided with reasonable written notice of the date, time, and location of the test, and of such examinee's right to obtain and consult with legal counsel or an employee representative before each phase of the test ….

As can be seen from the introductory language set forth in § 2007(b), that statutory provision merely prevents an employer, which fails to comply with the obligations imposed therein, from relying on the exemptions to liability set forth in § 2006(d), (e), and (f). In other words, § 2007(b)(2) did not create a separate right, the violation of which will permit the one whose right was violated to sue the violator for damages proximately caused thereby. More to the point, that statutory provision does not afford the Plaintiff the right to consult counsel. Its violation would merely prevent the Defendants from raising the exemptions to liability set forth in § 2006(d), (e) and (f). Moreover, this Court adopted the same rationale, in concluding that Defendants were entitled to summary judgment on the aspect of Plaintiff's claim that Slaton violated the EPPA by failing to provide Maybury with the notices and written documentation required by § 2007(b)(2). <u>See</u> Doc. #96 at 9-10. Indeed, Plaintiff has conceded in his Motion for Reconsideration that this Court had correctly concluded that the failure to provide Plaintiff the notices and written documentation, required by § 2007(b)(2), did not constitute a violation of the EPPA and conceded that Defendants' failure to comply with that statutory

provision would merely bar them from utilizing the exemption for ongoing investigations. See Doc. #97 at 13.

Accordingly, since Slaton's alleged deprivation of Plaintiff's right to consult counsel did not constitute a violation of a right afforded by the EPPA and, therefore, did not violate § 2002(4)(C), this Court reaffirms its decision to sustain Defendant's Motion for Summary Judgment (Doc. #56), as it relates to the aspect of Plaintiff's claim under the EPPA that he was fired, because he wanted to consult with counsel before signing a document acknowledging that he had been given a copy of revised Policy 717.

Given this Court's conclusion that § 2007(b)(2) does not afford the Plaintiff a remedy, even if Slaton discharged him because he wanted to consult with an attorney, it is not necessary for this Court to address the Plaintiff's assertion that the Court erroneously concluded that the evidence failed to raise a genuine issue of material fact concerning the question of whether Slaton knew that Maybury wanted to consult an attorney.

Based on the foregoing, the Court overrules Plaintiff's Motion for Reconsideration (Doc. #97), as it relates to the first proposition presented by Maybury.[10]

---

[10]The Court rejects Plaintiff's argument that this Court also erred in concluding that, in order to establish his claim under § 2002(4)(C), he had to prove that Slaton knew that he (Maybury) wanted to consult with an attorney. That statute provides, in relevant part, that it is unlawful for an employer to discharge an employee "because" he exercised a right afforded by the EPPA. The Plaintiff has not explained how an employer can take action against an employee, because the employee did something, if the employer is not aware that the employee had so acted. This can be seen by examining the manner in which a plaintiff can prove that he has been the victim of retaliation in violation of 42 U.S.C. § 2000e-3(a), which, inter alia, makes it unlawful to discharge an employee, because he engaged

III.  Whether the Defendants Can Take Advantage of the Ongoing Investigation Exemption Even Though Plaintiff Was Not Provided the Written Notice Required by 29 U.S.C. § 2007(b)(2), Since He Never Actually Took the Polygraph Examination

During its oral decision, this Court concluded that Defendants were not entitled to summary judgment on the basis of the limited exemption from the prohibitions of the EPPA for ongoing investigations.  The Court applied the four factors, set forth in 29 U.S.C. § 2006(d), which govern the applicability of that limited exemption.  During that discussion, this Court quoted from and relied upon the decision by the Eleventh Circuit in Polkey v. Transtecs Corp., 404 F.3d 1264 (11th Cir. 2005).  Therein, the court explained the exemption for ongoing investigations:

> The EPPA's prohibitions do not prohibit a covered employer from requesting a polygraph exam, where the employer demonstrates that: (i) the test is administered in connection with an ongoing investigation involving economic loss or injury to the employer's business; (ii) the employee had access to the subject of the investigation; (iii) the employer has a reasonable suspicion as to the employee's involvement in the loss; and (iv) the employer provides the employee with a signed written notice that specifically identifies the economic loss at issue, indicates that the employee had access to the property being investigated, and describes the basis for the employer's reasonable suspicion.  29 U.S.C. § 2006(d)(1-4).  As the statute is phrased in the conjunctive, an employer must comply with each of these requirements for the ongoing investigation exemption to apply.  See Lyle v. Mercy Hospital Anderson, 876 F. Supp. 157, 162 (S.D.Ohio 1995) (holding that employer "may only claim the ongoing investigation exemption by demonstrating that it meets all the elements of the exemption"); see also, 29 C.F.R. § 801.12(h) ("failure to satisfy any of the specified requirements nullifies the statutory authority [provided by the ongoing investigation exemption]").

---

in certain protected activity.  One of the elements of a prima facie case of retaliation is that the employer knew that the plaintiff had engaged in protected activity.  See e.g., Upshaw v. Ford Motor Co., 576 F.3d 576, 599 (6th Cir. 2009).

Id. at 1269. Accord Watson v. Drummond Corp., 436 F.3d 1310, 1314-15 (11th Cir. 2006). The four prong test referred to in Polkey tracks 29 U.S.C. § 2006(d)(1-4). The Polkey court also held that an employer who does not furnish the written notice, referred to in § 2006(d)(4), does not lose the ability to rely upon the ongoing investigation if the employee does not take a polygraph examination, since the fourth prong of the test applies only to examinees and an employee who is not given a polygraph test is not an examinee. 404 F.3d at 1269-70. Following Polkey, this Court ruled that the failure of Slaton to provide the notice referred to in § 2006(d)(4) did not disqualify Defendants from utilizing the limited exemption for ongoing investigations, given that Maybury did not take a polygraph examination and, therefore, was not an examinee.[11] Tr. (Doc. #96) at 15-17.

In his motion, Plaintiff does not challenge any of the foregoing. Rather, he argues that the Defendants cannot rely upon the limited exemption for ongoing investigations, as a result of 29 U.S.C. § 2007(b)(2), which provides:

> (b) Rights of examinee
> The exemptions provided under subsections (d), (e), and (f) of section 2006 of this title shall not apply unless the requirements described in the following paragraphs are met:
> \* \* \*
> (2) Pretest phase
> During the pretest phase, the prospective examinee–

---

[11]This Court also concluded that the evidence raised genuine issues of material fact on the first and third prongs of that test, whether Wayside suffered an economic loss as a result of the overspraying incident (§ 2006(d)(1)) and whether it had reasonable suspicion to believe that Maybury was involved in that incident (§ 2006(d)(3)). See Tr. (Doc. #96) at 14-15  It was uncontroverted that Maybury had access to the property that was oversprayed (§ 2006(d)(3)).

> (A) is provided with reasonable written notice of the date, time, and location of the test, and of such examinee's right to obtain and consult with legal counsel or an employee representative before each phase of the test;
> (B) is informed in writing of the nature and characteristics of the tests and of the instruments involved;
> (C) is informed, in writing—
>> (i) whether the testing area contains a two-way mirror, a camera, or any other device through which the test can be observed,
>> (ii) whether any other device, including any device for recording or monitoring the test, will be used, or
>> (iii) that the employer or the examinee may (with mutual knowledge) make a recording of the test;
> (D) is read and signs a written notice informing such examinee—
>> (i) that the examinee cannot be required to take the test as a condition of employment,
>> (ii) that any statement made during the test may constitute additional supporting evidence for the purposes of an adverse employment action described in subsection (a) of this section,
>> (iii) of the limitations imposed under this section,
>> (iv) of the legal rights and remedies available to the examinee if the polygraph test is not conducted in accordance with this chapter, and
>> (v) of the legal rights and remedies of the employer under this chapter (including the rights of the employer under section 2008(c)(2) of this title); and
> (E) is provided an opportunity to review all questions to be asked during the test and is informed of the right to terminate the test at any time.

(emphasis added). As can be seen from the foregoing, the ongoing investigation exemption, § 2006(d), is inapplicable, unless there has been compliance with § 2007(b). Moreover, it is uncontroverted that Defendants failed to provide the notices set forth in § 2007(b)(2). Unlike the requisites for the exemption set forth in § 2006(d), which this Court and the Eleventh Circuit in Polkey had relied upon and which applies to examinees, § 2007(b)(2) applies to prospective examinees and such requisites must be provided in the pretest phase. Thus, the question becomes whether Defendants were obligated to provide those notices to Maybury.

According to Plaintiff, he was entitled to the notices required by § 2007(b)(2), because he was in the "pretest phase" when he met with Slaton on September 11, 2006.[12] This Court is unable to agree. Neither the EPPA nor the regulations adopted pursuant to that statute define the phrase "pretest phase," although the regulations explain that "[t]he pretest phase consists of the questioning and other preparation of the prospective examinee before the use of the actual polygraph instrument." 29 C.F.R. § 801.23(a).

The parties have not addressed the issue of whether the interaction between Maybury and Slaton on September 11th consisted of "the questioning and other preparation of the prospective examinee before the use of the actual polygraph instrument." Therefore, this Court cannot conclude whether or not the events of September 11th occurred during the pretest phase. Consequently, the Court overrules this branch of the Plaintiff's motion.[13] That said, the Defendants will be able to prevail on their assertion that they are protected by the exemption, absent a showing that the events of September 11th occurred during the pretest phase.

---

[12]It bears emphasis that the allegations that Defendants violated that the EPPA by requesting Maybury to submit to a lie detector test and by threatening Maybury that he would be disciplined or discharged if he refused to take a polygraph are the only aspects of Plaintiff's claim under the EPPA which survived the Defendants' Motion for Summary Judgment (Doc. #56), and to which this Court applied the limited exemption for ongoing investigations. Those allegations arise out of the interaction between Maybury and Slaton on September 11th.

[13]Defendants argue that, since Maybury did not become an examinee, he was not a prospective examinee. The Defendants have not, however, explained why one cannot be a prospective examinee, if he does not subsequently become an examinee. On the contrary, one could refer to a law school graduate or even a student as a prospective lawyer, even though he or she does not, in the future, actually become one.

IV. Whether the Court Erroneously Concluded that an Issue of Fact Existed concerning the Question of Whether Slaton Was Acting as Maybury's "Employer," as Defined by the EPPA, on September 11, 2006

Among his other claims, Maybury alleged that Slaton had violated the EPPA, by threatening to discipline or discharge him if he refused to take a polygraph. See Doc. #47 at ¶ 42. During the telephone conference call conducted on July 27, 2009, the Court informed counsel that it was overruling the Plaintiff's Motion for Partial Summary Judgment (Doc. #58), with which Maybury had sought summary judgment on that claim. In ruling on that motion, this Court agreed with Plaintiff that Wayside Policy 717, which Slaton had given to Maybury on September 11th, violated 29 U.S.C. § 2002(3), because it contained a threat to discipline any employee who refused to take a polygraph. The Court did not, however, enter summary judgment in favor of Plaintiff on this claim, because, inter alia, it concluded that the evidence raised a genuine issue of material fact as to whether Slaton was Maybury's employer.[14] See Tr. (Doc. #96) at 10-13; Doc. #95 at 8-9. With this proposition, Plaintiff seeks reconsideration of the Court's decision in that regard. For reasons which follow, the Court overrules the Plaintiff's Motion for Reconsideration (Doc. #97), as it relates to this proposition.

As the Court indicated in both in its oral decision during the July 27th conference call and in its subsequent written decision, the issue of whether Slaton was Maybury's employer is to be resolved by utilizing the economic realities test, which is universally employed to determine whether a defendant is a plaintiff's employer in an action brought under the Fair Labor Standards Act ("FLSA"), 29

---

[14]Liability under the EPPA is imposed on employers.

- 17 -

U.S.C. § 201 et seq. In support of that conclusion, this Court relied upon the decision of the Tenth Circuit in Fernandez v. Mora-San Miguel Electric Co-op, Inc., 462 F.3d 1244 (10th Cir. 2006), wherein the court had applied the economic realities test to determine whether the defendant was the plaintiff's employer in a case arising under the EPPA.[15] The Fernandez court also set forth some of the factors that courts have considered when applying the economic realities test:

> "[D]istrict courts have considered whether the examiner (1) decided that a polygraph examination should be administered; (2) decided which employee would be examined; (3) provided expertise or advice to the employer regarding compliance with EPPA's requirements, or the employer relied on the examiner to ensure compliance; or (4) decided whether the examined employee would be subjected to disciplinary action, or merely reported the results of the polygraph examination to the employer."

Id. (quoting Calbillo v. Cavender Oldsmobile, Inc., 288 F.3d 721, 727 (5th Cir. 2002). See also Watson, 436 F.3d at 1316 (applying the economic realities test to determine whether the defendant was the plaintiff's employer in a case under the EPPA).

In his Motion for Partial Summary Judgment (Doc. #58), Plaintiff did not rely on the economic realities test when arguing that he was entitled to summary judgment on the question of whether Slaton was his employer. Rather, he merely stated that "Slaton clearly was acting directly in the interest of Wayside in relation to Maybury, and, therefore, meets the statute's definition of employer." Doc. #58 at 9. Indeed, Plaintiff did not cite evidence in support of the proposition that Slaton was his employer. With his Motion for Reconsideration, Plaintiff does not

---

[15]The Court also notes that both the FLSA and the EPPA define employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." See 29 U.S.C. § 2001(2) (defining employer under the EPPA) and 29 U.S.C. § 203(d) (defining employer under the FLSA).

challenge the applicability of the economic realities test. See Doc. #97 at 14. Instead, Plaintiff asserts that the Court did not identify sufficient evidence to raise a genuine issue of material fact on the status of Slaton as Plaintiff's employer. Id. Plaintiff's argument, however, is based upon a fundamental misunderstanding of what he must demonstrate to be entitled to summary judgment on the issue of whether Slaton was his employer, given that he will bear the burden of persuasion on the issue at trial. In Arnett v. Myers, 281 F.2d 552 (6th Cir. 2002), the Sixth Circuit discussed what the moving party must show to be entitled to summary judgment on an issue which it will bear the burden of persuasion at trial, writing "if the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" Id. at 561 (quoting 11 James William Moore et al., Moore's Federal Practice § 56.13[1], at 56-138 (3d ed. 2000)). Given that the Plaintiff did not cite any evidence to support his assertion that Slaton was his employer, Maybury has failed to show that the record contains evidence satisfying his burden of persuasion, much less that the evidence is so powerful that no reasonable jury could disbelieve it.

Accordingly, the Court overrules the Plaintiff's Motion for Reconsideration (Doc. #97), as it relates his third proposition.

Based upon the forgoing, the Court overrules Plaintiff's Motion for Reconsideration (Doc. #97) in its entirety.

As a result of the Court's rulings on the parties' motions seeking summary judgment, the following claims of the Plaintiff remain viable in this litigation, to wit: 1) his claim that Slaton had violated 29 U.S.C. § 2002(1), by requesting Maybury to submit to a lie detector test; and 2) Maybury's claim that Slaton had violated 29 U.S.C. § 2002(3), by threatening Maybury that he would be disciplined or discharged if he refused to take such a test. It bears emphasis that both of those claims arise out of incidents that occurred on September 11, 2006.

February 2, 2010

                                            /s/ Walter Herbert Rice
                                          WALTER HERBERT RICE, JUDGE
                                          UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.